ATLANTIC LUMBER CORPORATION v.
SOUTHERN PAC. CO. et al.
Civil No. 710.

District Court, D. Oregon.
Oct. 26, 1942.

See, also, 2 F.R.D. 313; 47 F.Supp. 514.

E. K. Marohn, of Seattle, Wash., for plaintiff.

Dey, Hampson & Nelson, Paul P. Farrens, and R. R. Morris, all of Portland, Or., for defendant Southern Pac. Co.

Carl C. Donaugh, U. S. Atty., and C. Laird McKenna, Asst. U. S. Atty., both of Portland, Or., and S. R. Brittingham, Jr., Sp. Asst. to Atty. Gen., of Washington, D. C., for defendant United States.

Allen Crenshaw, Atty., Interstate Commerce Commission, of Washington, D. C., for defendant Interstate Commerce Commission.

Before HANEY, Circuit Judge, and BOWEN and FEE, District Judges.

JAMES ALGER FEE, District Judge.

The real basis of the claims filed before the Commission and the "second cause of action" here is the charge that the Commission acted contrary to the evidence and without evidence, in finding that the tariff applied on shipments delivered to vessels at East Portland was not applicable on those handled through Vancouver or other ports not served by defendant, Southern Pacific Company, and the rates charged were discriminatory and unreasonable. The ultimate purpose of both the original pro-

ceeding and the "second cause of action" was to lay basis for assessment of a reparation, or for damages.

■ It is obvious no jurisdiction subsists here of an action or claim for damages against the United States or the Interstate Commerce Commission, since the latter is solely an agency or adjunct of the sovereign in passing upon the reasonableness of rates and the right to reparations. The United States has given no consent to suit of this sort, either against the sovereign or the agency.

■ So long as the order of the Commission, which holds that the rates and demurrage charges collected were reasonable and applicable, stands, no reparations or damages could be awarded against the Southern Pacific Company or any other defendant.

■ The power to give reparations in rate cases is of statutory genesis and was unknown to the common law. It is a discretionary authority reposed in the Commission in order to round out the scheme of regulation. Congress endowed with administrative finality such orders of the Commission.

■ Jurisdiction of the District Court, sitting with three judges, in this type of situation is only to "enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission".[1] There are many orders of the Commission which cannot be reviewed by such a court. Although the earlier cases used phraseology indicating that such a court had no jurisdiction to set aside a "negative order which denies relief without more compels nothing requiring enforcement, and contemplates no action susceptible of being stayed",[2] it was found that this formula was too loosely stated for specific application.[3] However, the courts constituted as this one is have no jurisdiction to review an order failing to allow reparations.[4] The purpose of Congress in constituting the Commission and in the various acts giving jurisdiction was the establishment of uniformity of administration in light of the declared policy upon these very matters.

The prescription of reasonable and lawful rates for the future might be a basis for action, except that plaintiff obviously does not desire or seek annulment of the order upon the theory that relief should be granted as to this feature.

■ However, it is alleged that the charges failed to conform to the rate properly construed. The Commission found that the rate and demurrage charged was intended to cover shipments on domestic or all rail movements. The export rates and demurrage were to apply on shipments which left East Portland alone. The railroad was not bound to the export rate and demurrage where the shipment went over the line of another carrier by rail to a port not designated in the tariff and not under control of the defendant, Southern Pacific Company, so that that company could not police the movement. The question of the proper rate and demurrage was correctly determined by the Commission on the principle that the lower charges of an export rate are applicable only when there is strict compliance with all conditions stated therein.[5]

The "second cause of action" stated in the second amended complaint is dismissed.

---

[1] 28 U.S.C.A. §§ 41, 43, 44, 45, 45a, 46, 47, 47a and 48.

[2] Standard Oil Company v. United States, 283 U.S. 235, 238, 51 S.Ct. 429, 430, 75 L.Ed. 999. Procter & Gamble Company v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091.

[3] Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L. Ed. 1147.

[4] Standard Oil Company v. United States, supra, explained in Note 23 at page 140 of 307 U.S., 59 S.Ct. 754, 83 L. Ed. 1147.

[5] See Mellon v. Erb, 9 Cir., 13 F.2d 752.