ASHLAND COAL & ICE CO., Inc., et al. v. UNITED STATES et al.

Civil Action No. 337.

District Court, E. D. Virginia, Richmond Division.

Jan. 25, 1945.

Walter M. Evans, of Richmond, Va., and Harry C. Ames, of Washington, D. C., for plaintiffs.

Robt. L. Pierce, Sp. Asst. to Atty. Gen., Harry H. Holt, Jr., U. S. Atty., of Norfolk, Va., and John V. Cogbill, Asst. U. S. Atty., of Richmond, Va., for United States.

Edward M. Reidy, Asst. Chief Counsel, of Washington, D. C., for Interstate Commerce Commission.

Frank W. Gwathmey, of Washington, D. C., D. Lynch Younger, of Roanoke, Va., Charles Clark and John C. Donnally, both of Washington, D. C., Horace L. Walker, of Richmond, Va., Henry W. Oppenhimer, of Richmond, Va., and Lawrence Chaffee, of Chicago, Ill., for intervenors.

Before DOBIE, Circuit Judge, and POLLARD and HUTCHESON, District Judges.

DOBIE, Circuit Judge.

This is a suit, under 28 U.S.C.A. §§ 41 (28) 43–47a, to set aside that part of the order of the Interstate Commerce Commission which denied reparation to the plaintiffs for the past. The Commission's order (this part is not attacked in the instant suit) reduced freight rates on shipments of coal to points in certain parts (the Western portion) of the designated shipping area. As to the past, however, the Commission decided that these rates were not unreasonable. The railroads which had been made defendants in the proceedings before the Commission were permitted, by order of the District Court, to intervene as parties defendant in the instant suit.

710

*(1) Jurisdiction.*

We must first consider the contention of the defendants that we have no jurisdiction to entertain the present suit. The ground of this contention is that this is plainly a suit to set aside an order of the Commission denying reparation to the plaintiffs; and that, under the Interstate Commerce Act, Sec. 9, 49 U.S.C.A. § 9, a specially organized three-judge District Court of the United States is powerless to entertain such a suit. We believe that this contention is sound and that this Court lacks jurisdiction.

Under Section 8 of the Interstate Commerce Act, 49 U.S.C.A. § 8, a common carrier by railroad committing an act, matter or thing prohibited by the Act is made liable in damages to the person or persons thereby injured. Section 9 of the Act, 49 U.S.C.A. § 9, provides that any person so damaged may *either* make complaint to the Interstate Commerce Commission *or* bring suit in a federal court for the recovery of damages; but this section contains the further provision: "such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt." Under Section 16 of the Act, 49 U.S.C.A. § 16, the Commission is authorized to award damages upon such a complaint.

The cases seem to establish the rule that where a litigant applies to the Commission for reparation, which has been denied by the Commission, an ordinary civil action cannot, on the same claim or cause of action, be entertained by an ordinary one-judge federal district court. George A. Hormel & Co. v. Chicago, M. & St. P. Ry. Co., 8 Cir., 283 F. 915, 918, opinion by Circuit Judge Lewis; Bartlesville Zinc Co. v. Mellon, 7 Cir., 56 F.2d 154, 156, opinion by District Judge Lindley. See, also, the opinion of Mr. Justice Butler in Baltimore & O. R. Co. v. Brady, 288 U.S. 448, 457, 458, 53 S.Ct. 441, 77 L.Ed. 888.

This brings us to the jurisdictional problem of the case before us. Can a party who has sought reparation before the Commission and has been denied such reparation by the Commission, bring a civil action (under the Urgent Deficiencies Act) in a specially organized three-judge district court for the purpose of setting aside the Commission's order? Section 9 of the Interstate Commerce Act, 49 U.S.C.A. § 9, we think, as interpreted by the federal courts, is an effective bar to such a civil action.

Mr. Justice Sutherland seems to have dealt rather effectively with this problem in the closing words of his opinion in Standard Oil Co. v. United States, 283 U.S. 235, 240, 241, 51 S.Ct. 429, 431, 75 L.Ed. 999:

"But putting the foregoing grounds entirely aside, and assuming the correctness of appellant's contentions to the contrary, nevertheless, having regard to the remedy invoked and the relief sought by the petition, we think the district court was without jurisdiction. Section 9 of the Interstate Commerce Act, c. 104, 24 Stat. 379, 382 (U.S.C., Title 49 § 90 (49 U.S.C.A. § 9)), provides that a claim for damages against a common carrier may be brought before the Commission by complaint, or by an action in a federal district court of competent jurisdiction, but that the claimant or claimants 'shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt.' Having elected to proceed and having proceeded to a determination before the Commission, appellant was, by force of this provision, precluded from seeking reparation upon the same claims by the alternative method of procedure. Compare George A. Hormel & Co. v. Chicago, M. & St. P. Ry. Co., 8 Cir., 283 F. 915, 918.

"It is true that appellant sought to enjoin and set aside the order of the Commission, but only as a preliminary step toward obtaining, by a decision upon the merits of the claims, the same relief it failed to secure from the Commission. This is made clear by the prayer of the petition, already quoted, namely, that the Commission be directed by the court to grant the prayer of the complaints; find that petitioner has been overcharged to the extent set forth; and order a further hearing, if necessary, to determine the amount to be paid by way of reparation. It is of no importance that the adjudication sought is to take the form of a direction to the Commission to grant the prayer of the complaints filed before that body, etc., instead of a plenary judgment to the same end, for the prayer in that form is nothing less than an attempt to avoid the statute by indirection. In substance and in principle the claim before the Commission and the claim before the

court were the same, and the district court was without authority to entertain the controversy. It is hardly necessary to add that, since section 9 contemplates that the jurisdiction in such cases shall be exercised by the federal district courts as ordinarily constituted, the specially constituted court is without jurisdiction to dispose of an action under that section even if brought in the District Court in the first instance."

True it is that in Rochester Telephone Corporation v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147, the Supreme Court repudiated the "negative order doctrine" as the touchstone of judicial reviewability. But in a note (No. 23) Mr. Justice Frankfurter, 307 U. S. at page 140, 59 S.Ct. at page 762, 83 L.Ed. 1147, was careful to point out:

"Standard Oil Co. v. United States [supra] held not reviewable the action of the Commission refusing to grant reparations, but the main *basis of the decision was not the 'negative order' doctrine but the statutory scheme dealing with reparations.*" (Italics ours.)

Thus, from our standpoint, the binding authority of the Standard Oil case was not impaired by the Rochester Telephone case.

No less emphatic was the language of District Judge Fee, speaking for a three-judge district court, in Atlantic Lumber Corporation v. Southern Pacific Co., D.C., 47 F.Supp. 511, 513, in which the Standard Oil case, the Rochester Telephone case (and other cases in this field) were analyzed and discussed:

"The power to give reparations in rate cases is of statutory genesis and was unknown to the common law. It is a discretionary authority reposed in the Commission in order to round out the scheme of regulation. Congress endowed with administrative finality such orders of the Commission.

"Jurisdiction of the District Court, sitting with three judges, in this type of situation is only to 'enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission.' There are many orders of the Commission which cannot be reviewed by such a court. Although the earlier cases used phraseology indicating that such a court had no jurisdiction to set aside a 'negative order which denies relief without more compels nothing requiring enforcement, and contemplates no action susceptible of being stayed,' it was found that this formula was too loosely stated for specific application. However, the courts constituted as this one is have no jurisdiction to review an order failing to allow reparations. The purpose of Congress in constituting the Commission and in the various acts giving jurisdiction was the establishment of uniformity of administration in light of the declared policy upon these very matters.

"The prescription of reasonable and lawful rates for the future might be a basis for action, except that plaintiff obviously does not desire or seek annulment of the order upon the theory that relief should be granted as to this feature."

Even more sweeping is the language of Circuit Judge Parker, in Brady v. Interstate Commerce Commission, D.C., 43 F.2d 847, 850, 851:

"Amending section 15 of the Interstate Commerce Act, the Act June 29, 1906 provided that the Commission should determine just and reasonable maximum rates and just, fair, and reasonable practices with respect to transportation and issue orders to carriers with respect thereto, and that all orders of the Commission, except orders for the payment of money, should take effect within such reasonable time, not less than thirty days, as might be prescribed by the Commission, unless same should be suspended or set aside by the Commission or by a court of competent jurisdiction. 34 Stat. 589 § 4 (49 U.S.C.A. § 15). By the amendment of section 16 (34 Stat. 590, § 5 (49 U.S.C.A. § 16) ), it drew a clear distinction between reparation orders and other orders of the Commission, by providing for suit in the circuit courts to collect damages in the case of reparation orders not complied with, and for application to a court of equity for the enforcement of other orders. Following this was the provision for suits to enjoin, set aside, annul, or suspend orders of the Commission; and when all of these provisions are considered together, we think it clear that the jurisdiction thus conferred was intended to relate to quasi legislative orders, in which the public at large are interested, disobedience of which is made punishable, and the suspension of which is expressly provided for by section 15 of the act, and not to reparation orders which affect only the rights of private individuals, have no binding force and do not subject anyone to punishment for disobedience. For distinction between the two kinds of orders,

see Baer Bros. [Mercantile Co.] v. Denver & R. G. Co., 233 U.S. 479, 34 S.Ct. 641, 58 L.Ed. 1055.

"This view is strengthened when it is remembered that the Act of June 18, 1910, creating the Commerce Court, 36 Stat. 539, vested that court with exclusive jurisdiction of suits to enjoin or set aside orders of the Commission and of only three other classes of cases, viz., suits for the enforcement of orders of the Commission, other than orders for the payment of money, suits to prevent unjust discrimination and rebating under the Act of February 19, 1903 (32 Stat. 847 (49 U.S.C.A. §§ 41–43) ), and applications for writs of mandamus to require carriers to comply with the provisions of the act. It will be noted that all three of these classes embrace only cases which are prosecuted for the benefit of the public at large and to which the public, through the representation of the Attorney General or the Commission, is a party. And we think it is a reasonable inference from the fact that suits to enjoin or set aside orders of the Commission were included with these, that such suits were understood to include only those which were brought to enjoin or set aside orders made by the Commission in its quasi legislative capacity and which affected the public at large.

\*     \*     \*     \*     \*

"The power of this court to grant injunctions in cases of this kind is no greater than that of the Commerce Court; for we exercise jurisdiction in such cases only by virtue of the provisions of the Urgent Deficiencies Act of Oct. 22, 1913, 38 Stat. c. 32, which abolished the Commerce Court and transferred to the District Courts its jurisdiction."

This case was affirmed by the United States Supreme Court, per curiam, sub nom. Brady v. United States, 283 U.S. 804, 51 S.Ct. 559, 75 L.Ed. 1424.

We are not impressed by the attempt of the plaintiffs to distinguish these cases and to minimize their authority. To us they seem controlling.

■    Nor can we find any merit in the contention of plaintiffs that this is not a suit to set aside an order of the Commission denying reparation. In their brief we find:

"There is no prayer before this Court that it determine either (a) whether we are entitled to reparation, or (b) 'the amount thereof.' This Court is simply asked to determine whether the Commission acted arbitrarily or beyond its statutory power in deciding *upon the same mass of evidence* that rates were *not* unreasonable prior to a certain date, but that they *are* unreasonable subsequent to such date and whether the decision of the Commission contains the essential findings of preliminary fact to sustain these divergent views. As a necessary corollary this suit raises the further question whether the Commission has wrongfully assumed a power of discretion in respect of determining past unreasonableness. If this Court finds with us, it is asked to remand the case for further action within the framework of power properly exercised."

If to this contention any answer be necessary beyond its mere statement, that answer, we think, is found in the words of Circuit Judge Swan, in George Allison & Co. v. United States, D.C., 12 F.Supp. 862, 863, 864:

"Plaintiffs, on the other hand, insist that they seek no reparation or damages, but merely ask annulment of part of an affirmative order arbitrarily fixing as reasonable the rates and charges attacked. The petition is framed so as to be consistent with this contention; as has been stated, plaintiffs request the annulment of the parts of the order of November 7, 1933, already indicated, and there is no prayer for damages or reparation. But it is too plain for argument that this suit was prompted by the hope that its success would pave the way for a later recovery of damages against the carrier in a larger amount than the order of November 7 permits. The plaintiffs, as complainants or interveners in the proceedings before the Commission, sought reparation as well as reasonable rates for the future. \* \* \* Hence, in substance there is presented a situation wherein shippers sought reparation for excess charges exacted by a carrier, and now complain that the Commission fixed reasonable rates for the past too high and failed to award them the full measure of damages they were entitled to. If this court has no jurisdiction to entertain such complaint, it cannot be conferred by the devious method of assailing in one step the preliminary finding upon which the damages awarded must be computed, and postponing to a later proceeding the actual prayer for additional reparation. Compare Standard Oil Co. (Indiana) v. United States, 283 U.S. 235, 241, 51 S.Ct. 429, 75

L.Ed. 999. The real inquiry is whether such jurisdiction exists."

This case was affirmed, on the strength of the Standard Oil case and the Brady case, George Allison & Co. v. United States, 296 U.S. 546, 56 S.Ct. 175, 80 L.Ed. 387.

We must therefore conclude that the instant case is not within the jurisdiction of our specially organized three-judge District Court. For that reason, the complaint of the plaintiffs must be dismissed.

### Merits.

Even if we concede that this Court has jurisdiction to set aside that part of the Commission's order which denied reparations, as to the past, for the plaintiffs, we still think that *on the merits,* the complaint must be dismissed.

Said Mr. Justice Cardozo, in Mississippi Valley Barge Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 693, 78 L.Ed. 1260:

"The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence upon which they were made. * * * The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion. * * * The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

The scope of our review is thus very narrow. And we think that the findings of the Commission (though not as clear and as complete as the importance of the instant case would justify) do afford ample support and a rational basis for the Commission's decision, which denied reparations to the plaintiffs.

There is nothing essentially inconsistent between the two conclusions of the Commission as to freight rates in the Western part of the district: (1) That these rates were unreasonable for the *future;* (2) that these same rates were not unreasonable as to the *past.*

In Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U.S. 479, 486, 34 S.Ct. 641, 644, 58 L.Ed. 1055, Mr. Justice Lamar aptly said:

" * * * awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its quasi judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi legislative capacity, to prevent future injury to the public."

The clear line of demarcation between these two functions of the Commission has been recognized in many cases by the federal courts. See, for example, Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943; Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 388, 52 S.Ct. 183, 76 L.Ed. 348; Morgan Co. v. Great Northern R. Co., 7 Cir., 285 F. 876, 877; George Allison & Co. v. Interstate Commerce Commission, 70 App.D.C. 375, 107 F.2d 180, 186, certiorari denied 309 U.S. 656, 60 S.Ct. 470, 84 L.Ed. 1005. A few representative cases, in which the Commission reached a like conclusion, may be cited. Anadarko Cotton Oil Co. v. Atchison, etc. Ry. Co., 20 I. C. C. 43, 50; Eastern Livestock Cases of 1926, 144 I. C. C. 731, 781; John Nix & Co. v. Railway Express Agency, 238 I. C. C. 60, 61.

We next discuss whether the Commission's order denying reparations is supported by the findings of the Commission. We think it is. The process of rate making cannot be solved by the rigid application of algebraic formulae or reduced to the monotonous regularities of mechanical instrumentalities. As Mr. Justice Lamar remarked in Interstate Commerce Commission v. Union P. R. Co., 222 U.S. 541, 550, 32 S.Ct. 108, 112, 56 L.Ed. 308:

"There is no possibility of solving the question as though it were a mathematical problem to which there could only be one correct answer."

And, in Board of Trade of Kansas City v. United States, 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432, Mr. Justice Frankfurter said:

"The process of rate making is essentially empiric. The stuff of the process is fluid and changing—*the resultant of factors that must be valued as well as weighed.*" (Italics ours.)

Among the important findings, on which the denial of reparations was grounded by the Commission, some may be pointed out and briefly discussed.

The Commission found: "The assailed rate of $2.65 to the destination group as a whole compares favorably with rates from both the southern and northern fields to

many destinations through the East and to the Carolinas." Certainly that is an important factor to be both valued and weighed. The case of the plaintiffs here was grounded very heavily on the basis of cost. The Commission indicated very clearly that this element in rate making had been duly appraised and was "entitled to considerable weight" though not in itself alone conclusive. Incidental reference was made to the possible effect of the instant rate on other rates for carriers of coal.

Stress was laid by the Commission on its past experience with freight rates on coal in this area. These rates had been duly considered by the Commission in a number of proceedings. Surely the Commission was amply justified both in considering the wide background of this experience and information thus gained and in making it a cardinal ground for its ultimate decision on the question of reparations.

Very dynamic and exceedingly influential was the Commission's finding that the instant rates had become unreasonable "as the result of *changes so gradual* that *no date can be pointed out upon which they became unreasonable.*" (Italics ours.) It would have been extremely helpful had the Commission been more specific as to the nature, the approximate dates and even the probable force, of these changes. Yet, standing alone and quite apart from any omissional imperfections, we must give it due consideration and proper heed.

■ We do not attribute very compelling force to the fact that "the history of the rates is such as to justify the carriers in believing that they were maintaining rates which had our (the Commission's) approval." Whatever probative force this fact may have on the question of wilfullness on the part of a carrier, it could hardly be a basis for sustaining (as to the past) a freight rate in the face of convincing proof that this rate was unreasonably high. This does not, of course, mean that evidence justifying such belief would not have some force as tending to prove the reasonableness of the assailed rate. See the vigorous language of District Judge Paul in City of Danville v. Chesapeake & O. Ry. Co., D.C., 34 F.Supp. 620, 623, 628, 629.

As to the standards applied by the courts in passing on the sufficiency of the Commission's findings, Mr. Justice Brandeis, in United States v. Baltimore & O. R. Co., 293 U.S. 454, 464, 465, 55 S.Ct. 268, 273, 79 L.Ed. 587, said:

"In [State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291], the legal distinction was pointed out between what may be termed quasi jurisdictional findings, there held to be indispensable, and the 'complete statement of the grounds of the Commission's determination' which was declared in Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221, to be desirable for a proper consideration of the case in the courts. The lack of such a complete statement, while always regrettable, because unnecessarily increasing the labor of the reviewing court (compare Virginian Ry. v. United States, 27 U.S. 658, 675, 47 S.Ct. 222, 71 L.Ed. 463), is not fatal to the validity of the order. It is true that *formal and precise findings are not required*, under section 14(1) of the Interstate Commerce Act * * *, which declares that the report 'shall state the conclusions of the commission, together with its decision.' Compare Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831; Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 428, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691 * * *. That provision relieves the Commission from making comprehensive findings of fact similar to those required by Equity Rule 70½ * * *. But section 14(1) does not remove the necessity of making, where orders are subject to judicial review, quasi jurisdictional findings essential to their constitutional or statutory validity." (Italics ours.)

And see Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 427, 428, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691; Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831; and United States v. Chicago, M., St. P. & P. Ry. Co., 294 U.S. 499, 504, 505, 510, 511, 55 S.Ct. 462, 79 L.Ed. 1023.

■ Counsel for plaintiffs maintain seriously and strenuously that the Commission has "substituted a supposed 'rule of damage' for its elementary duty to pass upon the reasonableness per se of freight rates" and has "imported into this proceeding * * * a restatement in different form of the 'extortion' theory * * * repeatedly rejected by Congress." In the light of what has been previously said in this opinion, we think this contention is lacking in substantial merit.

In Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333, said Mr. Justice Douglas:

"The Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."

This statement was further approved in Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 512, 513, 64 S.Ct. 1129, 88 L.Ed. 1420.

We do not think the plaintiffs here have carried the heavy burden, thus imposed on them, by making a convincing showing that the order of the Commission denying reparations is invalid.

An order will be drawn dismissing the complaint of the plaintiffs.

Complaint dismissed.

POLLARD and HUTCHESON, District Judges, concur.