**UNITED STATES v. INTERSTATE COM-
MERCE COMMISSION et al.
Civil Action No. 4729–47.**

District Court of the United States for the
District of Columbia.
June 28, 1948.

Tom C. Clark, Atty. Gen., John F. Son-
nett, Asst. Atty. Gen., George Morris Fay,
U. S. Atty., of Washington, D. C., James E.
Kilday, and David O. Mathews, Special
Asst. to the Atty. Gen., Frank F. Vesper
and James C. Moore, Special Attys., both
of Washington, D. C., for the United States.

Daniel W. Knowlton, of Washington, D. C., for the Interstate Commerce Commission.

Windsor F. Cousins, of Philadelphia, Pa. and Hugh B. Cox, of Washington, D. C., for Pennsylvania R. Co.

Charles P. Reynolds, of Washington, D. C., for Atlantic Coast Line R. Co. and others.

Martin A. Meyer, Jr., of Washington, D. C., for Virginian R. Co.

Charles Clark and A. J. Dixon, both of Washington, D. C., for Southern R. Co.

Before CLARK, Associate Justice, United States Court of Appeals for the District of Columbia, and McGUIRE and HOLTZOFF, Associate Justices, District Court of the United States for the District of Columbia.

HOLTZOFF, Associate Justice.

This is an action brought before a statutory three-judge court to set aside an order of the Interstate Commerce Commission, dismissing a complaint of the United States, by which the United States sought an allowance from certain railroads for wharfage and handling services rendered in connection with shipments made by the Government during World War II at Norfolk, Virginia. The action is brought under the Urgent Deficiencies Act, U.S.C.A., title 28, sec. 41, par. 28, and secs. 43–48, and under Section 9 of the Interstate Commerce Act, U.S.C.A., title 49, sec. 9.

For a great many years it had been the general practice of railroads serving North Atlantic ports, including Norfolk, to load and unload from car to pier, and vice versa, traffic brought to the port by rail and intended to be transhipped by vessel. The charges for this service, known as wharfage, were included and absorbed in the railroad traffic rates. At the Port of Norfolk, the cost of this labor to the railroads was four cents per hundred pounds. This sum constituted the compensation paid by the carriers to The Transport Trading and Terminal Corporation, which actually performed this task in their behalf.

During World War II, the War Department shipped a substantial volume of goods from various points in the United States to Norfolk, over the trunk line railroads serving that port, for transportation by vessel to points beyond Norfolk, as well as from points beyond Norfolk to points in the interior. Due to the emergency the Government took over the piers at which these goods were handled, and performed the wharfage services itself with its own employees. Nevertheless, the railroads persisted in charging and the Government continued to pay the full traffic rate for transportation, which included four cents per hundred pounds as cost of wharfage.

In view of the fact that the Government had performed the service itself, the United States filed a complaint with the Interstate Commerce Commission praying for reparation at the rate of four cents per hundred pounds on all of the goods that were handled by the Government at Norfolk in the above described manner. The Interstate Commerce Commission dismissed the complaint, on the basis of a finding that the refusal of the railroads to make the allowance to the United States for the wharfage services performed by the Government itself on its own shipments, was not an unsound or unreasonable practice, did not result in unreasonable or inapplicable rates and was not unjustly discriminatory to the United States, United States v. Aberdeen & Rockfish RR Co., 263 I.C.C. 303 and 264 I.C.C. 683. Thereupon the present action was brought to review the decision of the Interstate Commerce Commission and to set aside its order, which had been issued on July 25, 1947.

At the outset it becomes necessary to determine whether this action may be maintained. Section 9 of the Interstate Commerce Commission Act, U.S.C.A., title 49, sec. 9, provides as follows: "Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each

case elect which one of the two methods of procedure herein provided for he or they will adopt. * * *"

█ In other words, the law accords two alternative remedies to any person who is damaged by any action of a common carrier violative of the Interstate Commerce Act. The injured party either may make a complaint to the Interstate Commerce Commission or may bring an action for damages against the carrier in the District Court of the United States. The two remedies are mutually exclusive. In this instance, the United States did not choose to bring suit against the railroads in the District Court of the United States, but elected to present a complaint to the Interstate Commerce Commission. The United States now seeks a review of the adverse decision of the Commission by an action brought before a three-judge court.

█ The statute regulating actions to review orders of the Interstate Commerce Commission, U.S.C.A., title 28, sec. 46, provides, in part, as follows: "Suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the district court against the United States. * * *"[1]

An action of this type is a suit against the United States, United States v. Griffin, 303 U.S. 226, 238, 58 S.Ct. 601, 82 L.Ed. 764.

█ In other words, a suit to review an order of the Interstate Commerce Commission must be brought against the United States as the defendant. Accordingly, in this action the United States of America is named both as the petitioner and as the defendant. The Interstate Commerce Commission is added as a co-defendant, although there seems to be no warrant in law for this course.[2] We are thus confronted with an anomaly,—a suit by the United States of America against the United States of America.

█ The United States is not a mere nominal party defendant. The legislative history of the above-mentioned statute demonstates that the Congress deliberately and intentionally provided that such suits should be brought against the United States and that this requirement was no inadvertence. It was first introduced into the law by the Act which created the Commerce Court, Act of June 18, 1910, Sec. 3, 36 Stat. 539, 542. The provision was debated at length on the floor of each House. These discussions clearly indicate that it was the intention of the authors of the legislation that the Attorney General of the United States should appear in behalf of the United States, and defend the action of the Interstate Commerce Commission.[3] Attempts were made to modify this provision in order that the action might be brought against the Interstate Commerce Commission, rather than against the United States, but these endeavors were defeated.

It is clearly, therefore, the duty of the Department of Justice to defend the order

---

[1] Such an action must be heard by a three-judge court, U.S.C.A., title 28, § 47.

[2] The law authorizes the Commission to intervene in the suit, but does not provide for making the Commission a party defendant originally, U.S.C.A., title 28, § 45a.

[3] Senator Elihu Root made the following statement on the floor of the Senate (45 Cong. Rec. p. 4104): "The Attorney General would be bound upon all and the highest considerations of his professional honor and his official duty to defend the order of the Interstate Commerce Commission in all courts having jurisdiction to review it."

Representative Townsend said on the floor of the House of Representatives (45 Cong. Rec. p. 5525): "* * * when it (i.e. an order of the Interstate Commerce Commission) is attacked it becomes the duty of the Attorney General to defend."

Senator Sutherland (later Mr. Justice Sutherland) said (45 Cong. Rec. p. 6457): "The order of the Interstate Commerce Commission is quasi legislative, and, as I have said, it becomes, in substance and effect, the order of the Government of the United States, and it simply occurs to me that it is more fitting that the action to have the order declared invalid as invading the constitutional rights of the railroad company should proceed against the Government of the United States than it is to have it proceed against the Interstate Commerce Commission."

of the Interstate Commerce Commission. Necessarily, the Department may not be on both sides of the case. Yet an examination of the petition filed by the United States, and of the answer filed in its behalf, indicates that both pleadings were signed by the same Assistant Attorney General.

■ No person may sue himself, Lord v. Veazie, 8 How. 251, 12 L.Ed. 1067; Cleveland v. Chamberlain, 1 Black 419, 66 U.S. 419, 17 L.Ed. 93; Wood-Paper Co. v. Heft, 8 Wall. 333, 19 L.Ed. 379. This principle is applicable to the United States. The Government may not sue itself. This is true even if the nominal plaintiff is a party who is subrogated to the rights of the Government, Globe & Rutgers Fire Ins. Co. v. Hines, 2 Cir., 273 F. 774, 777; Defense Supplies Corporation v. United States Lines Co., 2 Cir., 148 F.2d 311.

In Globe & Rutgers Fire Ins. Co., v. Hines, supra, the court stated, 273 F. page 777: "It is elementary that the same person cannot be both plaintiff and defendant at the same time in the same action. It is incongruous that the same person should direct and conduct both the prosecution and the defense of the same suit, no matter in what capacity he may appear."

■ It may be observed in this connection, that the United States of America always acts in a sovereign capacity. It does not have separate governmental and proprietary capacities, Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466.[4]

■ The foregoing rules are but applications of the general doctrine that Federal courts may deal only with actual cases and controversies, Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed 246; Aetna Life Ins. Co. of Hartford, Conn., v. Haworth, 300 U.S. 227, 239-241, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. Naturally there cannot be a controversy if the same party is both plaintiff and defendant. If attorneys representing the Department of Justice appear on both sides of the same case, there is no actual controversy, but merely a discussion or debate of a moot question.

■ It is the view of this court, therefore, that this action may not be maintained, as the United States of America is both plaintiff and defendant. This conclusion is accentuated by the fact that it is the duty of the Department of Justice under the statute to defend the action of the Interstate Commerce Commission.

The cases on which the Government relies are not in point. In Interstate Commerce Commission v. Mechling, 330 U.S. 567, 573, 67 S.Ct. 894, 91 L.Ed. 1102, the plaintiffs in the action brought before the three-judge court were A. L. Mechling, a water carrier, the Inland Waterways Corporation, and the Secretary of Agriculture. The latter was authorized by a specific statutory provision to seek judicial relief with respect to rates and charges for the transportation of farm products. Consequently, it was not a case in which the United States was both plaintiff and defendant.

In United States v. Public Utilities Commission, 80 U.S.App.D.C. 227, 151 F.2d 609, a direct appeal was taken from an order of an administrative agency. This case, too, did not involve a situation in which the same party, the United States of America, was both plaintiff and defendant.

It is further urged that an order of the Interstate Commerce Commission of the type involved in this case is not reviewable in an action brought before a three-judge statutory court. This position is clearly sustained by Ashland Coal & Ice Co. v. United States, D.C., 61 F.Supp. 708; affirmed 325 U.S. 840, 65 S.Ct. 1573, 89 L.Ed. 1966, in which Judge Dobie wrote an exhaustive and persuasive opinion. It is argued, however, that this decision has been, in effect, overruled in El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053. The opinion in the El Dorado case does not refer to the Ashland case. Whether the Ashland case

---

[4] Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736, which holds to the contrary, must be deemed to have been overruled by Graves v. People of State of New York ex rel. O'Keefe, cited in the text.

584

must be deemed overruled, need not be decided, in view of the disposition heretofore indicated.

■ It has been suggested that unless the United States of America may maintain this action, it is without a remedy. This contention is hardly well founded, because the United States has the opportunity of electing the other alternative remedy provided by the statute, namely, to bring suit against the common carriers in the United States District Court. Under any circumstances, this Court must enforce the will of the Congress, which clearly did not contemplate or intend to permit a suit by the United States of America against the United States of America, to review an order of the Interstate Commerce Commission. If the situation here presented is a casus omissus, the remedy lies solely with the legislative branch of the Government.

In view of the foregoing considerations, we do not reach the merits of the case.

Judgment dismissing the complaint.