114 N.J. Super. 334 (1971)
276 A.2d 378
PUBLIC SERVICE COORDINATED TRANSPORT, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DELAWARE RIVER PORT AUTHORITY, A BODY CORPORATE AND POLITIC CREATED BY COMPACT BETWEEN THE STATE OF NEW JERSEY AND THE COMMONWEALTH OF PENNSYLVANIA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1971.
Decided April 14, 1971.
*335 Before Judges GOLDMANN, LEONARD and FRITZ.
Mr. Richard Fryling argued the cause for appellant (Mr. Walter S. Cramer, attorney).
Mr. E. Stevenson Fluharty argued the cause for respondent (Messrs. Duane, Morris & Heckscher, attorneys, Mr. Roland Morris of counsel).
The opinion of the court was delivered by FRITZ, J.A.D.
This is an action by plaintiff Public Service Coordinated Transport to recover from defendant Delaware River Port Authority a portion of certain bridge tolls paid under protest. Plaintiff paid these tolls from a date when defendant raised the tolls until a reduction in the tolls some months later following an administrative hearing regarding the reasonableness of the toll structure. Plaintiff seeks to recoup the difference between the amount of the tolls paid and the later adjustment.
The essential facts are not in dispute. Defendant is a bistate body corporate and politic created by compact between *336 the State of New Jersey and the Commonwealth of Pennsylvania, consented to by the Congress of the United States. That compact authorized defendant to own and operate the Walt Whitman and Benjamin Franklin Bridges which cross the Delaware River between Camden, New Jersey, and Philadelphia, Pennsylvania.
Defendant's toll rates have at all times been and remain subject to the provisions of section 503 of the General Bridge Act of 1946 as amended (33 U.S.C. § 526), which reads as follows:

Amount of tolls
If tolls shall be charged for the transit over any interstate bridge of engines, cars, street cars, wagons, carriages, vehicles, animals, foot passengers, or other passengers, such tolls shall be reasonable and just, and the Secretary of Transportation may, at any time, and from time to time, prescribe the reasonable rates of toll for such transit over such bridge, and the rates so prescribed shall be the legal rates and shall be the rates demanded and received for such transit.
Plaintiff is a motor carrier of passengers for hire and operates, among other services, interstate service between points in New Jersey and points in other states, including the Commonwealth of Pennsylvania. Its buses annually make numerous crossings over the Delaware River on defendant's bridges.
Defendant charges tolls for vehicular crossings of the aforementioned bridges. During the latter part of January 1968 defendant announced its intention of increasing its various toll rates effective February 1, 1968. The purpose of such increase was to provide financing for the construction of two new bridges, a high-speed transportation facility between Lindenwold, New Jersey, and Philadelphia, and certain other facilities and improvements. Included among other increases was the raising of the bus toll rate from 50¢ to $1 per crossing.
Subsequent to the increase in rates, complaints with respect thereto were made to the Federal Highway Administrator who, by virtue of a chain of legislation and delegation, *337 succeeded to the authority of the Secretary of the Army as prescribed in section 503 of the General Bridge Act.
An administrative hearing plumbed the matter in depth. Plaintiff, among others, participated fully. The hearing examiner, on extensively detailed findings and conclusions, determined in part, that the bus tolls should be reduced and recommended a 10% downward adjustment to 90¢. We note that the Federal Highway Administration was represented as an interested entity at the hearing and that its brief, filed for the hearing officer's benefit, concluded that "a reduction should be made in bus tolls from $1.00 to 75 cents or in the alternative a 10% discount be granted busses based on frequent use; and that with this adjustment the tolls should be found just and reasonable."
Despite an apparently contrary finding below, we are satisfied that the hearing officer made a specific finding "that the present bus tolls [i.e., $1] are above the zone of reasonableness."
Exceptions to the report and the recommended order were filed with the Federal Highway Administrator who, on September 11, 1968, filed his opinion. With the express exception of the bus tolls, about which more later, the Administrator concluded that "the examiner's recommended toll structure * * * is just and reasonable and [I] am adopting the findings of fact he has made." We conceive this to be an adoption of the finding of unreasonableness with respect to the $1 bus toll, although it should be noted that the Administrator found later (in an opinion and order filed on December 11, 1968, on a petition for reconsideration by the City of Philadelphia) that "the Administrator did conclude that the Port Authority had made a prima facie showing that its toll schedule was reasonable. Although the opinion did not specifically so state, that conclusion is implicit." This subsequent opinion and order denied the petition for reconsideration and specifically declared that "the proceedings in this case are hereby terminated."
*338 With respect to the exception concerning the bus tolls, the Administrator concluded his earlier opinion as follows:
I find that if the present toll schedule is revised so as to (1) reduce the present bus toll rate by 25 percent, and (2) provide a 10 percent scrip discount for trucks over 7,000 pounds gross weight as recommended by the examiner, that the resulting toll schedule is reasonable and just. Unless the DRPA toll schedule is so revised within 20 days from the date of this opinion the Administrator will issue an order prescribing such rates as the legal rates to be charged by the Authority.
Defendant did not seek administrative or judicial review or reconsideration of the Administrator's action, nor did it wait for the Administrator to implement his opinion by order. Defendant reduced the bus toll rate from $1 to 75¢, effective October 1, 1968.
Plaintiff seeks reimbursement for the difference between the $1 per trip it paid during the period from February 1 to October 1, 1968, and the 75¢ per trip rate found to be within the zone of reasonableness by the Administrator and fixed by defendant as the toll effective October 1, 1968. The parties agree that during this period plaintiff's buses made 465,125 crossings at the $1 rate and the amount in controversy is established to be $116,281.
Plaintiff sued defendant in the Law Division of the Superior Court for these damages, asserting that "the amount so charged and collected by defendant was unreasonable and unjust, was excessive to the extent of 25¢ per crossing, and to that extent was illegal by virtue of the provisions of Section 503 of the General Bridge Act of 1946, 60 Stat. 847, 33 U.S.C. § 526." An answer was filed by defendant, who then responded to plaintiff's appropriate request for admissions, from which record the foregoing facts appear. As observed above, these facts are not in dispute. Cross-motions for summary judgment were filed. This appeal is from a summary judgment entered in favor of defendant and from denial of plaintiff's motion for summary judgment.
We concur in the result reached below.
*339 Plaintiff bottoms its action upon the existence of a common law right of reparations. Although the cases are not in harmony and the matter cannot be said to be entirely free from doubt, it would appear that such a right existed. Texas and Pacific Railway Company v. Abilene Cotton Oil Company, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907) (hereinafter Abilene); cf. Ocean Grove Camp Meeting Ass'n v. Bradley Beach, 91 N.J.L. 364 (C.P. 1918), aff'd o.b., 93 N.J.L. 249 (E. & A. 1919), where it is said (91 N.J.L. at 366) that "the law raises an assumption to refund the money which can no longer be honestly retained." There is authority to the contrary. Atlantic Lumber Corp. v. Southern Pacific Co., 47 F. Supp. 511 (D. Ore. 1942). It appears clear that charges paid to governmental authorities may be recouped in cases where there is no proper warrant for the charge. Kastens v. West New York, 88 N.J. Super. 224 (App. Div. 1965), Smith v. Jersey City, 52 N.J.L. 184 (E. & A. 1889), Forbes Pioneer Boat Line v. Board of Commissioners, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922), reversing 80 Fla. 252, 86 So. 199 (Sup. Ct. 1920). But cf. Alfred Vail Mutual Ass'n v. Halpin (New Shrewsbury), 107 N.J. Super. 517 (App. Div. 1969), aff'd 58 N.J. 40 (1971).
We need not resolve here the issue of the existence of reparations at common law, since we are satisfied that under Abilene, supra, and T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), the matter of these bridge tolls is the subject of regulatory legislation sufficient to extinguish a common law right to reparations if such existed.
The matter is not without difficulty. Reduced to basic analysis the holdings in Abilene and T.I.M.E. seem at first blush to converge and blend into the unlikely propositions that: If sanctions are provided in the legislation, an intent to extinguish the common law right is demonstrated. If sanctions are not provided, the same intent can be found on the basis that the legislative body, having elsewhere provided *340 for sanctions and having thus recognized its power to impose such sanctions, would have provided for them if they were intended. We suspect an implicit judicial recognition, with which our own opinion accords, that common law sanctions are, in all practicality, inconsistent with legislative regulation where rates for public utilities  e.g., bridge tolls  are concerned. Consistent with the rationale of Abilene and the majority opinion in T.I.M.E., we hold to the opinion that in this day of universal administrative control of rate making in the public interest, such rule is sound. Nor should there be any necessity to arrive at such a declaration by a tortured application of the factual situation.
Thus viewed, any irrationality between T.I.M.E. and Abilene, so vigorously decried by the dissent in T.I.M.E. where Justice Black complained he was "unable to understand why the Court strains so hard to reach so bad a result," not only can be explained and understood, but also serves to recall the wisdom of Justice Holmes in his observation that "various circumlocutions" are employed because "constitutional principles must leave some play to the joints of the machine." Forbes Pioneer Boat Line v. Board of Commissioners, supra, 258 U.S. at 340, 42 S.Ct. at 326, 66 L.Ed. at 649 (1922).
Be all this as it may, the fact remains that we are controlled by the T.I.M.E. decision. It was there held (in a determination that the Abilene result "did not rest upon the fact that under Part I [of the Interstate Commerce Act] the I.C.C. had reparations authority with respect to unreasonable charges paid by shippers") that "the crucial question of reasonableness [cannot] be decided by the courts." Or as pungently paraphrased in the dissent, that "primary jurisdiction [in the administrative body] is inconsistent with court remedies of any kind."
It is appropriate to observe here that a major thesis of the dissent in T.I.M.E now seems unsound. The dissent insisted that legislative history of the Motor Carrier Act *341 involved in T.I.M.E. (but not in Abilene) demonstrated congressional understanding of Abilene that if sanctions were not expressly provided, the common law sanctions would be preserved. Despite the far-reaching import of the T.I.M.E. decision, with the attendant insistence of the dissent that congressional intent had been subverted, Congress on August 24, 1962, by Pub. L. 87-595, § 1, 76 Stat. 397, amended section 216 of the Motor Carrier Act, 49 U.S.C. § 316, having to do with rates, without legislatively altering the impact of T.I.M.E. and without changing the provision of that act which, before T.I.M.E. and since, reads, "Nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith." We presume that the legislators were aware of the T.I.M.E. holding.
The practical reasons for the soundness of such a rule are obvious. If common law sanctions were preserved to plaintiff, they would of necessity be preserved in any similar situation to the many hundreds of thousands of commuters and transients who used such a bridge and paid a toll later found to be above the zone of reasonableness. The multitude of claims which might follow, all potentially the subject of litigation in the courts, extends beyond reason. Worse, the disparate results almost certain to flow from a succession of trials would demonstrate precisely the inequalities abhorred in Abilene. As in Abilene, this alone would frustrate the purpose of the legislation and is inconsistent with its intent.
The question of reasonableness of bridge tolls is not a matter for the courts, but has been exclusively preempted by legislation imposing the obligation upon the proper administrative authority under the regulation of section 503 of the General Bridge Act of 1946.
Even were this not so, the result achieved below was correct. There is no disagreement, even as between the majority and dissent in T.I.M.E., that reasonableness of rates is in any case first a matter for the administrative agency whose "primary jurisdiction" is unquestioned. In the instant *342 matter the only determinations heretofore administratively made are that $1 was above the zone of reasonableness and that 75¢ was within the zone of reasonableness. The extent to which the 25¢ differential, or any part thereof, has crossed the line marking the extremes of the zone of reasonableness has not been so determined, and should in no event be first determined by a court. Abilene and T.I.M.E. contain nothing to the contrary. In fact, it would appear that the litigants in T.I.M.E. both conceded that "the question of reasonableness of past rates cannot itself be decided in the courts" but is a matter for administrative agency determination. 359 U.S. at 468, 79 S.Ct. at 907, 3 L.Ed.2d at 956.
Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), where fraud was asserted, and Hewitt-Robins, Inc. v. The Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962), having to do with routing rather than rates, are distinguishable.
The judgment is affirmed. No costs.