**ISHVERLAL MADANLAL & CO. et al.,**
**Plaintiffs,**

v.

**SS VISHVA MANGAL, her engines, boilers, etc., and the Shipping Corporation of India, Limited, Defendants.**

**No. 68 Civ. 4503.**

United States District Court,
S. D. New York.
April 11, 1973.

Wilson & Hopkins by Walter L. Hopkins, New York City, for plaintiffs.

Donovan, Donavon, Maloof & Walsh by Francis V. Elias, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendants move for summary judgment dismissing the complaint, solely as to plaintiff "Director General of the India Supply Mission for and on behalf of The President of the Union of India" (hereinafter "Supply Mission"), pursuant to Rule 56, F.R.Civ.P., on the ground that there exists between plaintiff Supply Mission and defendants, no real "case or controversy" over which the Court may exercise jurisdiction under Article III, Section 2, Clause 1 of the Constitution.

There are no disputed issues of material fact. Plaintiffs are the owners of mixed cargo aboard the steamship VISHVA MANGAL. A fire occurred aboard the vessel on October 20, 1967 at Searsport, Maine.

Jurisdiction is founded on 28 U.S.C. § 1333. The dispute arises out of a maritime contract of carriage evidenced by a bill of lading issued by the Master of the VISHVA MANGAL at Pascagoula, Mississippi for 100,000 bags (5,000 metric tons) of ammonium phosphate owned by Supply Mission for discharge at Madras or Calcutta, India. Liability is founded upon claims of unseaworthiness and negligence.

Defendant vessel and her owner entered a general appearance in this Court, presumably because the vessel could have been arrested within this District.

While the action is, at least in name, between the owner of the cargo, and the vessel or her owners, in actuality, as Chief Judge Friendly of this Circuit has remarked [Leather's Best, Inc. v. S. S. MORMACLYNX, 451 F.2d 800, 815 (2d Cir. 1971)], ". . . the cargo insurer [is] admittedly the true plaintiff here."

Permitting insurers of cargo to sue as subrogees in the name of the owners is a long standing admiralty tradition. As expressed in Colinvaux, Carver's Carriage By Sea, 12th ed. (London, 1971) vol. 2, p. 1183:

"*Underwriters entitled to benefit.* And if the person who has been damnified was insured against such a loss, and has been indemnified by the underwriters, he may still sue for compensation on their behalf. They are entitled to the benefit of his right of action, either against the wrongdoer,

or against the shipowner on the contract, where the loss is one for which he has undertaken responsibility; and they may claim to sue in the name of the assured upon properly indemnifying him."

Against this factual background, defendants assert that because of the peculiar status of the nominal parties, this litigation may not proceed, because it is not an actual "case or controversy" within the meaning of Article III of the Constitution, which limits our jurisdiction.[1]

Plaintiff Supply Mission is an arm of the President of India.[2] Supply Mission performs a governmental function, that is acquisition of and delivery to the Indian people of goods such as the instant cargo, needed for relief, economic development or warfare.

Defendants urge in support of this motion that The Shipping Corporation of India, Limited, owner of the VISHVA MANGAL, is likewise an arm of the Government of India, and that the government can't sue itself, because such a suit would not be a "case or controversy".

The Shipping Corporation was formed as a result of the merger of a corporation owned solely by President of India, with Western Shipping Corporation Limited ("Western"), a private company. This merger was effected in 1961 by the Indian Government, as an act of state, by an order or decree entitled "The Shipping Corporations Amalgamation Order".

This order of amalgamation provided [¶ 7(i)] that the Western shareholders would receive shares "equivalent in number and value" in the resultant corporation, to the shares they held in Western prior to the merger.

Articles of Association were issued pursuant to the order, providing for the regulation of the affairs of the resulting company, defendant here. These articles contain several provisions which appear to recognize the existence of present, or possible future beneficial economic interests of private shareholders. For example, under article 9 thereof, the Corporation has a lien on the proceeds of sale of stock by a shareholder. This implies that a shareholder has at least some limited right to sell, on compliance with other provisions which require approval by the President of India. Article 21(1) authorizes the President of India, "so long as he is a member of the Company", to appoint a representative to attend meetings. This provision contemplates the possibility that the Government of India might at some future time choose to sell, transfer or distribute its shares in some manner, and cease to be the controlling shareholder.

There are 13 individual named shareholders, holding a total of 710 shares of stock of the Corporation.

The affidavit of Shashi Ranjan Prasad, sworn to July 17, 1972, indicates that Mr. Prasad is Administrative Director and Secretary of the Shipping Corporation of India, Limited, and has been associated with the Corporation since October 2, 1961. He advises as follows:

"Although some shares in the capital of the Shipping Corporation are technically owned by the individual officials of the Government of India, and other persons, in effect all of the share capital of the Corporation is owned by the President of India rep-

1. Just as the cargo insurer is the true plaintiff here, the true defendants here are the P & I underwriters for the vessel. See letter of defendant Shipping Corporation of India, Limited, dated February 11, 1970, annexed to affidavit of Francis V. Elias, Esq., sworn to September 21, 1972 and quoted *infra*, pp. 391–392, et seq.

2. The sovereign state or government of India is known as "The President of India", a usage similar to "S.P.Q.R." and "The People of the State of New York". Reference herein to President of India means the Indian Government (see affidavit of Girish V. Bhatt, ¶ 4, sworn to April 25, 1972).

resenting the Government of India, since all individual shareholders are nominees of the President of India.

All revenues received by the Corporation are considered its internal revenues and none is covered (sic) directly into the Treasury of the Government of India. However, whenever a year of operation discloses a surplus or profit, dividends may be declared, as they are from time to time, and all dividends on such shares of the corporation are paid to the President of India and none are retained by the individual shareholders. . . ."

The shares are not traded on the market, and dividends are not taxable.

Plaintiff asserts that issues of fact exist with respect to the status of these shares and the owners, but sets forth no specific facts showing that there is a genuine issue for trial. He has not discharged the requirement to "at least specify some opposing evidence which it can adduce and which will change the result". Radio City Music Hall Corp. v. United States, 135 F.2d 715, 718 (2d Cir. 1943), cited with approval in Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972).

Movant relies on Defense Supplies Corp. v. United States Lines Co., 148 F. 2d 311 (2d Cir. 1945), cert. denied 326 U.S. 746, 66 S.Ct. 43, 90 L.Ed. 446, which affirmed dismissal of a cargo libel brought against the United States under the Suits in Admiralty Act. The libellant was a corporation whose stock was wholly owned by Reconstruction Finance Corporation, the stock of which in turn was wholly owned by the United States. The Court of Appeals held that there was no real case or controversy for judicial determination (148 F.2d 311, 312):

"It seems clear to us that the complete ownership of the Defense Supplies Corporation by the United States shows this to be nothing more than an action by the United States against the United States. . . . In private litigation, the plaintiff and defendant cannot be the same. For, in that event, there is no real case or controversy."

As in the present case, an insurance company subrogated to the rights of Defense Supplies Corporation, was the real party in interest. This is of course obvious, since the United States could have directed itself, readily, to grant itself a discontinuance ·in its own courts were the situation otherwise. Judge Frank commented about this aspect of the litigation and said:

"We recognize the fact that the real parties in interest are the insurance companies. But their right to sue is dependent upon the right of the party to whom they are subrogated." [Citing in footnote Phoenix Ins. Co. v. Erie & W. Transportation Co., 117 U. S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Globe & Rutgers Fire Ins. Co. v. Hines, 273 F. 774 (2d Cir. 1921).]

Movant also cites Benevento v. United States, 160 F.2d 487 (2d Cir. 1947); Luckenbach S. S. Co. v. United States, 315 F.2d 598, 604 (2d Cir. 1968) and United States v. Interstate Commerce Commission, 78 F.Supp. 580, 583 (D.C. D.C.1948); this latter case was reversed. See 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451.

Defense Supplies Corporation was created pursuant to a charter promulgated by Reconstruction Finance Corporation (6 F.R. 2972, as amended 6 F.R. 3363). We will not discuss its nature in detail, except to observe that its formation was in aid of the war power, unlike merchant shipping, always a governmental function. The nature of Defense Supplies Corporation is best determined from a reading of Article Fifth of the charter, which provides in part as follows:

"That the Corporation shall be an instrumentality of the United States Government, shall be entitled to the free use of the United States mails and shall in all other respects be possessed of the privileges and immunities that are conferred upon the

Reconstruction Finance Corporation. . . ."

The charter provided for partial tax exemption and for appointment of the directors by the Reconstruction Finance Corporation, which was not to be liable for the debts, contracts or engagements of the corporation.

Congress had authorized the Federal Loan Administrator with the approval of the President to organize such a corporation, and had authorized Reconstruction Finance Corporation to make loans to or purchase the capital stock thereof, by § 5d of the Reconstruction Finance Corporation Act, as amended by Chapter 427 of the Laws of 1940, 54 Stat. 572, Pub.L.No. 664 of 1940.

There were no private shareholders of any kind either in Defense Supplies or in the Reconstruction Finance Corporation. The other cases cited are factually distinguishable.

We could not say that the Shipping Corporation of India is clearly an arm or instrumentality of the Government of India in the same sense that the Defense Supplies Corporation was such an arm of the United States Government. It seems rather to be a hybrid corporation whose charter, powers and provisions indicate that it was the result of the merger of a government owned and controlled corporation with a private corporation, and could, without any change in its structure, become a private corporation tomorrow, merely by a transfer of shares from the President of India to private shareholders. A fair construction of the Order of Amalgamation indicates that the Government of India did not expropriate the private shareholders of Western. The monetary interests of such shareholders are recognized and protected in the Articles of Association of the Shipping Corporation of India, Limited, annexed to Mr. Bhatt's affidavit. Accordingly, we think that *Defense Supplies* is factually distinguishable.

We also consider ourselves entitled, notwithstanding *Defense Supplies, su-* *pra*, to look to the real parties in interest, and to the nature of the underlying controversy in order to ascertain whether or not there is a real controversy and whether jurisdiction exists. United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L. Ed. 1451, decided in 1949, after *Defense Supplies*, would seem to have overruled *Defense Supplies, sub silentio.*

In that case, the United States, as a shipper, challenged in the District Court, an ICC order denying a recovery of money damages against certain railroads for an allegedly unlawful rate which had been exacted of the United States as a shipper. Instructive are the observations of Mr. Justice Black, 337 U.S. 429, 69 S.Ct. et seq.:

"The United States brought this action in a United States District Court to set aside the Commission order. . . . The Interstate Commerce Commission was made a defendant. The United States was also made a defendant because of a statutory requirement that any action to set aside an order of the Interstate Commerce Commission 'shall be brought . . . against the United States.' 28 U.S.C. (1946 ed.) § 46, [now § 2322]. Railroads that collected the wharfage charges intervened as defendants under authority of 28 U.S.C. (1946 ed.) § 45a, [now § 2323]. The Attorney General appeared for the Government as both plaintiff and defendant. Without reaching the merits of the case, the District Court composed of three judges dismissed the cause on the theory that the Government could not maintain a suit against itself.

. . . We hold that the dismissal was error and that the case should have been considered on its merits.

*First.* There is much argument with citation of many cases to establish the long-recognized general principle that no person may sue himself. Properly understood the general principle is sound, for courts only adjudicate justiciable controversies. They

do not engage in the academic pastime of rendering judgments in favor of persons against themselves. Thus a suit filed by John Smith against John Smith might present no case or controversy which courts could determine. But one person named John Smith might have a justiciable controversy with another John Smith. This illustrates that courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented."

Similarly, in U. S. ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953) the Supreme Court permitted an officer of the United States government, the Secretary of the Interior, to maintain a suit in his official capacity against another agency of government, the Federal Power Commission. The Secretary there was seeking to set aside an order of the Federal Power Commission issuing a license for the construction of a hydroelectric plant to a private power company. Like the underwriters in this case, and the railroads in the *Interstate Commerce* case, the private power company in *Chapman* was the real party in interest.

We read these cases to indicate a willingness by the Supreme Court to look to reality to determine whether a case or controversy exists; something the Circuit Court declined to do in the *Defense Supplies* case.

The common law, in part because of its traditional fondness for fictions, and in part, because of the unwillingness of the English admiralty practitioners to recognize, or apply to maritime underwriters, the principles of Lawrence v. Fox, 20 N.Y. 268 (1859), required and entitled underwriters to sue in the name of those having privity of contract.

We think that applied to the circumstances of this case, *Defense Supplies* has either lost its force as precedent, or is distinguishable on its facts, and that

the better view would allow subrogated litigants in the posture of these parties to adjudicate their claims in this Court, just as they may do in the courts of any other maritime nation. We do not find any inhibition in the Constitution or statutes against taking jurisdiction of the matter.

Furthermore, a reasonable inference from undisputed facts concerning the corporate structure and articles of association of the Shipping Corporation of India, Limited, justifies a finding that it is not in fact an arm of the Government of India, but rather a private corporation which happens to be, at the present time and since 1961, but not necessarily forever, owned by the Government.

Instructive is the letter from Mr. Prasad dated September 17, 1970, attached to the affidavit of Francis V. Elias, Esq., sworn to September 21, 1972, in which he says of the Shipping Corporation that it

"is a separate autonomous body. It is not a Department or a part of the Government of India. As in U.S.A., so also in India, corporate bodies can sue their Governments and can be sued against by their Governments. The Director General of India Supply Mission is fully entitled to bring a suit against the Shipping Corporation and vice versa. This is in accordance with normal democratic usage in countries like India, U.S.A. and Great Britain."

Shipping Corporation wrote a letter dated February 11, 1970 to the Steamship Mutual Underwriting Association, Ltd. (P&I Underwriters for the vessel) as follows:

"The Ministry of Supply have asked us for our comments if any, before they inform ISM [India Supply Mission], Washington, to associate themselves with the proposed litigation [this action] in New York on behalf of the cargo interests.

**392**

It appears to us that if the cargo in-. terests, including ISM, Washington, desire to file a suit against us as advised by their lawyers, we could hardly object to the same. However, if you have any particular comments to convey to the Ministry of Supply here, kindly let us know by cable by Monday or Tuesday next. If we do not receive any cable from you, then we would send a reply to the Ministry of Supply that if they desire they may join the litigation at their own expense and cost, without any commitment on our part. If the suit would be instituted then you would doubtless make arrangements to contest it."

The Court in *Leather's Best, supra,* (at 451 F.2d 800, 817) discussed the effect of established rules of law as causing a shipper ". . . either to take out more insurance than the statute contemplated, or to forego such insurance. . . ." Surely a shipper or the owner of cargo cannot advise himself on the subject of insurance, and his underwriter cannot advise himself on the nature and extent of the risk and the proper amount of the premium to be charged therefor, if it will be necessary in case of each shipment to make a full and complete examination into the corporate charter and affairs of the corporation which owns the vessel by which the cargo is being lifted, just to see if the right of subrogation will be effective. An examination in this case would have shown very little, because the contract of affreightment was made by Norton Lilly & Co., as agents for "Scindia Steam Navigation Company".

We should not extend, unnecessarily, any rules of case law which will frustrate the normal expectation of parties to commonplace mercantile arrangements; that is what is sought to be done here.

The motion is denied.

So ordered.