April 22, 1977

## 77–22 MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL, TAX DIVISION

### Proposed Tax Assessment Against the United States Postal Service

This is in response to your request for our opinion as to the available remedies to resolve a dispute between the Internal Revenue Service (IRS) and the Postal Service. In our opinion, the question for consideration is the justiciability of a dispute between the IRS and another executive branch entity regarding Federal taxes to be paid by the latter. We conclude that there is no reasonable basis to believe that such a dispute over the allocation of funds between two executive agencies, a matter that does not concern any adverse private person as a "real party in interest," is justiciable. If formally asked this question by the Postal Service and IRS, we would so respond. Having so concluded, we see no need for us to consider the question of what administrative steps must be taken to bring the matter into a litigating posture.

The dispute involves the Airport and Airway Revenue Act of 1970, which imposes a 5 percent tax on the amount paid for the transportation of property by air. 26 U.S.C. § 4271.[1] The tax is imposed upon the person making the transportation payment subject to the tax. The legislative history of the statute clearly indicates that the Postal Service

---

[1] The provision reads in pertinent part as follows:

§ 4271. *Imposition of tax*

(a) In general.—There is hereby imposed upon the amount paid within or without the United States for the taxable transportation . . . of property a tax equal to 5 percent of the amount so paid for such transportation. The tax imposed by this subsection shall apply only to amounts paid to a person engaged in the business of transporting property by air for hire.

(b) By whom paid.—

(1) In general.—. . . the tax imposed by subsection (a) shall be paid by the person making the payment subject to tax.

is subject to the transportation tax,[2] and, so far as we are aware, the Postal Service has not disputed this. The particular issue concerns the proper computation of the tax. The IRS in Revenue Ruling 74-512 required the Postal Service to pay the 5 percent tax not only on the line haul charge it pays to air carriers for transportation of mail, etc., but also on terminal handling charges, including receipt of mail, loading, unloading, and transfer of mail between planes. The Postal Service disagrees with this interpretation of § 4271 and has refused payment of the tax on the terminal handling charges, although it has apparently paid the line haul charges.

Section 4291 of Title 26 provides, with certain exceptions, that persons receiving payments for services or facilities subject to tax[3] shall collect the tax from the person making the payment; but an administrative regulation, Treas. Reg. § 154.2-1(f)(1), provides that in the case of amounts subject to tax that are paid by the Postal Service, the tax shall be paid directly to the IRS by the Postal Service as if it were a collecting agent.[4]

We understand that the IRS is presently holding in abeyance a proposed tax assessment of some $10 million against the Postal Service. The IRS has raised the question whether it may follow its regular assessment procedure, under which the Postal Service would be required to pay the tax, claim a refund, and bring suit against the United States for the refund in order to contest the IRS' interpretation of § 4271.

The leading case on the issue of justiciability in this context is *United States* v. *I.C.C.*, 337 U.S. 426 (1949). The question there was whether the United States as a shipper was barred from challenging in the Federal courts an Interstate Commerce Commission order denying the Government a recovery in damages for the exaction of an allegedly unlawful railroad rate. Both the Commission and the United States were made defendants, the latter because of the statutory requirement that any action to set aside an order of the Commission had to be

---

[2] The House Committee report states:

> The exemptions for transportation furnished to State and local governments, the United States, and nonprofit educational organizations are terminated. Removing the exemption for transportation furnished to the United States subjects the Post Office to the 5 percent property tax on amounts it pays for the transportation of mail by air. It did not seem appropriate to continue special exemptions for these governmental and educational organizations since this tax is now generally viewed as a user charge. In this situation there would appear to be no reason why these governmental and educational organizations should not pay for their share of the use of the airway facilities. H. Rep. No. 601, 91st Cong., 1st Sess., at 46 (1969). Accord, S. Rep. No. 706, 91st Cong., 2d Sess., at 18 n. 5 (1970).

[3] According to Rev. Rul. 74-512, in most cases the Postal Service pays an air carrier to perform these services.

[4] The IRS has informed us that although Treas. Reg. § 154.2-1(f)(1) arguably is contrary to § 4291, in its view, if the Postal Service paid the claimed tax pursuant to this regulation, the Postal Service would not be barred from bringing suit for a refund by the rule that a mere volunteer who pays a tax may not sue for a refund. The refund statutes and regulations do not expressly cover this situation. *See* 26 U.S.C. § 6415.

brought against the United States. A three-judge district court dismissed the case on the ground that the Government could not sue itself. The Supreme Court reversed in a unanimous opinion, holding that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented," at 430. It viewed the case as one involving controversies of a type that were traditionally justiciable, stating at 430–431:

> The basic question is whether railroads have illegally exacted sums of money from the United States. Unless barred by statute, the Government is not less entitled than any other shipper to invoke administrative and judicial protection. To collect the alleged illegal exactions from the railroads the United States instituted proceedings before the Interstate Commerce Commission. In pursuit of the same objective the Government challenged the legality of the Commission's action. This suit therefore is a step in proceedings to settle who is legally entitled to sums of money, the Government or the railroads. The order if valid would defeat the Government's claim to that money. But the Government charged that the order was issued arbitrarily and without substantial evidence. . . . Consequently, the established principle that a person cannot create a justiciable controversy against himself has no application here.

In our opinion, the Court's analysis does not support the position that the Postal Service and IRS are entitled to judicial resolution of their dispute. The only significant similarity is that the dispute involves large sums of money; otherwise, the situations are markedly dissimilar. In *United States* v. *I.C.C.*, as the Court noted, "the basic question [was] whether railroads have illegally exacted sums of money from the United States"; here the basic question is which of two governmental entities is entitled to money appropriated by Congress. It is in essence an interagency dispute. The question of which agency should have the money is peculiarly inappropriate for judicial determination; we do not believe that a question of this kind is one that, in the words of the Court, "involves controversies of a type which are traditionally justiciable." 337 U.S. at 430.

Subsequent judicial holdings confirm our view. The lower court decisions following *United States* v. *I.C.C.* have interpreted it as upholding Federal jurisdiction over a suit by the Government against itself only if one of the real parties in interest is a truly adverse private party. *United States* v. *Easement and Right of Way*, 204 F. Supp. 837 (D. Tenn. 1962), was a condemnation suit brought by the Tennessee Valley Authority (TVA) in which it sought to join as a defendant the Farmers Home Administration (FHA), Department of Agriculture, which held a mortgage security interest in the land involved. The court held that this could not be done, stating that "there could not be any issue between the TVA and the FHA, both being the United States, which this Court could litigate or adjudicate. Any differences between

these agencies would at most be interagency disputes which are not subject to settlement by adjudication." 204 F. Supp. at 839. A similar analysis was applied in *Ishverlal Madanlal & Co.* v. *SS Vishva Mangal,* 358 F. Supp. 386 (D. N.Y. 1973), a suit brought by the Indian Supply Mission on behalf of the Indian government against a vessel and its owner (a corporation formed by the merger of a private corporation and a second corporation wholly owned by the Indian government) for damage to the cargo. Although the plaintiff was the Supply Mission, the real party in interest was the cargo insurer. The court held that the suit was justiciable. It interpreted *United States* v. *I.C.C.* as holding that the courts should "look to the real parties in interest and to the nature of the underlying controversy in order to ascertain whether or not there is a real controversy and jurisdiction exists." 358 F. Supp. at 390. The court noted that in *U.S. ex rel. Chapman* v. *F.P.C.,* 345 U.S. 153 (1953), a proceeding by the Secretary of the Interior for judicial review of an order by the Federal Power Commission, the real party in interest adverse to the Secretary was a private power company licensed by the Commission.

In *Chapman,* the Supreme Court did not discuss the justiciability issue.[5] The only Supreme Court opinion to address this question since *United States* v. *I.C.C.* is *United States* v. *Nixon,* 418 U.S. 683 (1974), which involved quite unusual facts. In *Nixon,* the Court upheld the jurisdiction of a Federal district court over the Special Prosecutor's attempt to enforce a documentary subpoena directed to President Nixon, who claimed executive privilege. The President argued that there was no case or controversy because the dispute was solely an intrabranch dispute between members of the executive branch. The Supreme Court rejected this argument, citing *United States* v. *I.C.C.,* and other decisions of the Court.[6] It noted that the material was sought for use in a Federal grand jury proceeding, and that the enforceability of a subpoena and the claim of a privilege were traditionally justiciable issues (at 696–697). Moreover, the concrete adverseness necessary to sharpen the issues was present. *See,* 418 U.S. at 697. Although the Special Prosecutor was an agent of the executive branch, he had been delegated the authority by the Attorney General to challenge the President's refusal to produce evidence.

Although a number of the cases cited by the Court involved intra-branch disputes, they provide little guidance, because the Court did not discuss the issue. *See, United States* v. *Marine Bancorporation,* 418 U.S.

---

[5] The Court observed that the Secretary had standing, but it stated that the difference in views between the members of the Court precluded a single opinion on this issue, and that setting out the divergent views would "not further clarification of this complicated specialty of federal jurisdiction, the solution of whose problems is in any event more or less determined by the specific circumstances of individual situations . . . ." 345 U.S. at 156.

[6] The Court stated (p. 693): "The mere assertion of a claim of an 'intra-branch dispute,' without more, has never operated to defeat federal jurisdiction; justiciability does not depend on such a surface inquiry."

602 (1974); *United States* v. *Connecticut National Bank,* 418 U.S. 656 (1974); *Powell* v. *McCormack,* 395 U.S. 486 (1969); [7] *Federal Marine Board* v. *Isbrandtsen,* 356 U.S. 481, 483 n. 2 (1958); *Secretary of Agriculture* v. *United States,* 347 U.S. 645 (1954); *United States ex rel. Chapman, supra; I.C.C.* v. *Jersey City* 322 U.S. 503 (1944).

Thus the few cases dealing explicitly with this problem require at a minimum that there be an issue of the kind traditionally viewed as justiciable, and also that there be sufficient adverseness to sharpen the issues. With regard to the adverseness of the parties, the Postal Service, like the Special Prosecutor in *Nixon* and the regulatory agencies involved in *United States* v. *I.C.C.* and *U.S. ex rel. Chapman* v. *F.P.C.,* has a degree of independence from the executive branch. It is an "*independent* establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. [Emphasis added.] It was removed from direct political control,[8] and given considerable independence in managing its finances.[9] It has the authority to sue and be sued in its official name, 39 U.S.C. § 401(1), and, with the prior consent of the Attorney General, it may employ its own attorneys to conduct its litigation. 39 U.S.C. § 409(d).

But we do not believe that there is a nongovernmental "real party in interest" here. Congress intended to apply the tax in § 4271 to the transportation of the mails and other transportation "*furnished to the United States.*" [Emphasis added.] [10] We recognize that the individual users of the mails and of the airports and airways have an interest in the outcome of this dispute; the mail rates may increase if the Postal Service's costs increase, and a decrease in revenues collected under § 4271 might ultimately result in the imposition of a higher rate of tax on those who use the airports and airways. However, these broad interest groups are not identifiable individuals or entities like the railroads and private power companies in *United States* v. *I.C.C.* and *U.S. ex rel. Chapman,* respectively, who were active parties in the agency

---

[7] The Court did reject the argument that the case was nonjusticiable because judicial review would improperly interfere with the functioning of the coordinate legislative branch. 395 U.S. at 548–49.

[8] A Board of Governors is appointed by the President for a fixed term. 39 U.S.C. § 202. These Governors, not the President, "shall appoint and shall have the power to remove the Postmaster General . . [and to fix his] pay and term of service . . . ." 39 U.S.C. § 202(c). The Governors and the Postmaster General then appoint his Deputy and fix his term. 39 U.S.C. § 202(d). *See* H.R. Rep. No. 1104, 91st Cong., 2d Sess. at 11–13 (1970); H.R Doc. No. 313, 91st Cong., 2d Sess. at 52.

[9] In enacting the Postal Reorganization Act, Congress' purpose was to authorize the operation of the Postal Service in "a business-like way." H.R. Rep. No. 1104, 91st Cong., 2d Sess. 11 (1970). The Postal Service Fund is available to the Service without fiscal year limitation. 39 U.S.C. § 2003. It is required to submit a yearly budget, including a statement of the amounts it requests to be appropriated, and the President is required to include these amounts "with his recommendations but without revision, in the budget transmitted to Congress." 39 U.S.C. § 2009. It is authorized to "determine the character of, and necessity for, its expenses," to "determine and keep its own system of accounts," to "settle and compromise claims by or against it," and "sue and be sued in its official name." 39 U.S.C. § 401.

[10] H.R. Rep. No. 601, *supra,* n. 2.

83

and judicial proceedings, vigorously defending their private interests. In contrast, nearly all citizens use the mails, and of course many individuals and businesses use both the mails and the airports and airways. The interests represented by both the Postal Service and the IRS are facets of the public interest, not truly private interests adverse to those of the Federal Government as a whole.

For the foregoing reasons, it is our opinion that the question here involved in not susceptible of resolution by the courts.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
